# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Duniyo Hussein, Naima Omar Issa, Leyla Yusuf, Raymond Deshler, Assiongbonvi "Luc" Kangnigan, Melvin Holmes, Abraham Quevedo Orantes, Leticia Zuniga Escamilla, on behalf of themselves, the Proposed Rule 23 Class, and others similarly situated, | Civil No. 15-CV-2498 (SRN/BRT) |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| v. | |
| Capital Building Services Group., Inc., | |
| Defendant. | |

Carl F. Engstrom, Paul J. Lukas, and Adam W. Hansen, Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, Minnesota 55402, for Plaintiffs

David A. Schooler, Ellen A. Brinkman, and Michael C. Wilhelm, Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Plaintiffs' Motion for Conditional Class Certification and Judicial Notice Pursuant to 29 U.S.C. § 216(b), Class Certification Under Rule 23, and for a Preliminary Injunction Under Rule 65 [Doc. No. 5]. In this Memorandum Opinion and Order, the Court addresses only the portion of Plaintiffs'

motion seeking conditional certification under § 216(b).[1]  As to conditional class

certification under § 216(b), for the reasons set forth herein, Plaintiffs' motion is granted.

## I.    BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs Duniyo Hussein, Naima Omar Issa, Leyla Yusuf, Raymond Deshler,

Assiongbonvi "Luc" Kangnigan, Melvin Holmes, Abraham Quevedo Orantes, and Leticia

Zuniga Escamilla ("Plaintiffs") work or worked as cleaners at Macy's and Herberger's

department stores in Minnesota.  (Compl. ¶ 2 [Doc. No. 1].)  They are or were directly

employed by Defendant Capital Building Services Group, Inc. ("Capital").  (Id.)  Capital,

an Illinois company, provides commercial cleaning services to retail, corporate,

commercial, industrial, banking, and educational venues in 25 different states, including

Macy's and Herberger's in Minnesota.  (Id. ¶¶ 2; 21-22.)  The eight named Plaintiffs seek

to represent a class of all cleaners, including crew leaders, who worked for Capital in

Minnesota within a three-year period.  (Pls.' Mot. for Cond'l Cert. at 2 [Doc. No. 5].)

Plaintiffs filed this lawsuit on May 20, 2015, asserting minimum wage, overtime,

record keeping, and method of payment violations under the Minnesota Fair Labor

Standards Act ("MFLSA") (Counts I, IV, VII, and VIII), (see Compl. ¶¶ 98-108 [Doc. No.

1]); minimum wage, overtime, and retaliation claims under the Fair Labor Standards Act

---

[1]    The Court will rule separately on Plaintiffs' motion as it relates to Rule 23 class certification and the issuance of a preliminary injunction.  These portions of Plaintiffs' motion remain under advisement.

("FLSA") (Counts II, III, IX, and XI), (see id. ¶¶ 109-19; 120-27; 176-83; 192-99); unpaid

wages and earnings statement violations under the Minnesota Payment of Wages Act

("MPWA") (Counts V and VI), (see id. ¶¶ 138-52; 153-61); and a violation of the

Minnesota Whistleblower Act (Count X), (see id. ¶¶ 184-91).  Through the instant motion,

Plaintiffs seek conditional certification of their proposed FLSA collective claims in Counts

II and III of the Complaint for minimum wage and overtime violations.[2]

As noted, this lawsuit arises from Plaintiffs' and the putative class members'

employment as cleaners with Capital.  Plaintiffs Hussein, Deshler, Holmes, Quevedo, and

Zuniga are current employees who work as cleaners or crew leaders (Compl. ¶¶ 15, 16,18,

19, 20 [Doc. 1]); Plaintiffs Issa, Yusuf, and Kangnigan are former employees (id. ¶¶ 13,

14,17) who worked as cleaners employed during the relevant time period.  During

Quevedo's tenure with Capital, he has also held the position of area manager.  (Quevedo

Decl. ¶ 2, Ex. 8 to Hansen Decl. [Doc. No. 8-2].)[3]

Based on Quevedo's former experience as an area manager, his declaration

submitted in support of Plaintiffs' motion provides general information about Capital's

structure and policies.  Quevedo attests that Capital's operational policies are determined

at its principal office in Illinois.  (Id. ¶ 15.)  Capital's district managers are responsible for

---

[2] Plaintiffs Yusuf and Quevedo assert individual claims under the FLSA in Counts
IX and XI that are not the subjects of this conditional certification motion.

[3] All exhibits attached to the Hansen Declaration as Plaintiffs' declarations are
found at ECF Doc. No. 8-2.

implementing those policies and managing day-to-day operations.  (<u>Id.</u>)  A single district manager is responsible for Capital's cleaning operations in Minnesota.  (<u>Id.</u>).  The district manager oversees all duties related to payroll including setting employees' schedules, entering their hours, and handling any complaints or disputes concerning payroll.  (<u>Id.</u> ¶ 17.)  In addition, the district manager makes all hiring and firing decisions.  (<u>Id.</u>)  Directly below the position of district manager is the area manager.  (<u>Id.</u> ¶ 18.)  The area manager's primary duty is to travel between Macy's and Herberger's stores in Minnesota and perform cleaning tasks when a cleaner does not report to work or when extra cleaning is required.  (<u>Id.</u>)

Cleaners and crew leaders work at each store.  (<u>Id.</u> ¶ 19.)  The crew leader is responsible for the overall cleanliness of a given store.  (<u>Id.</u>)  Capital employs approximately 50 cleaners to clean Macy's and Herberger's stores in Minnesota.  (<u>Id.</u> ¶ 21.)  Quevedo attests that employee turnover is high; consequently, he estimates that Capital has employed several hundred cleaners in Minnesota.  (<u>Id.</u>)

### 1.    Record Keeping

Plaintiffs contend that until early 2015, Capital failed to provide pay stubs or any written or electronic earnings statements to its employees.  (Hussein Decl. ¶ 3; Issa Decl. ¶ 3; Yusuf Decl. ¶ 3; Deshler Decl. ¶ 3; Kangnigan Decl. ¶ 3; Holmes Decl. ¶ 4; 6; Quevedo Decl. ¶ 6; Zuniga Decl. ¶ 3.)  Specifically, Hussein contends that she never received a pay stub until March 2015 (Hussein Decl. ¶ 3), while Holmes and Quevedo began receiving them earlier in 2015, when Capital switched payroll processing companies (Holmes Decl.

¶ 4; Quevedo Decl. ¶ 6.)  Former employees Issa, Yusuf, and Kangnigan assert that they

never received a pay stub at any time, (Issa Decl. ¶ 3; Yusuf Decl. ¶ 3; Kangnigan Decl. ¶

3), and all Plaintiffs contend that they were unable to see or print their earnings statements

at work when Capitol used a different payroll processing company prior to January 2015.

(<u>Id.</u>; Hussein Decl. ¶ 3; Deshler Decl. ¶ 3; Holmes Decl. ¶ 4; Quevedo Decl. ¶ 6; Zuniga

Decl. ¶ 3.)

When Quevedo worked as an area manager, he was able to use a company

computer to see his net pay and hours worked for himself and for other employees, but he

was unable to see taxes withheld or gross pay.  (Quevedo Decl. ¶ 7.)  When employees

complained to Quevedo about the lack of pay stubs, he told them that he was unable to

access this information and, per his district manager's instructions, told employees to

"check the computer."  (<u>Id.</u>)

Quevedo also attests that each Macy's and Herberger's store has a small room used

by Capital as an office.  (<u>Id.</u> ¶ 20.)  During Quevedo's tenure, he has seen or used the

offices in the majority of the Macy's and Herberger's stores in Minnesota.  (<u>Id.</u>)  While

several of the offices do not have computers, in those that have either a computer or tablet,

the devices are only to be used by the district manager or area manager.  (<u>Id.</u>)  According

to Quevedo, employees are not permitted to use these computers for any reason, including

viewing or printing their earnings statements.  (<u>Id.</u>)

### 2.      Form/Method  of Payment

As to the form of cleaners' pay, Quevedo states that employees are given only two options: a payroll card or direct deposit of pay into their bank accounts.  (Id. ¶ 12.)  He contends that employees do not have the option of receiving a paycheck and that employees receiving payroll cards incur ATM/debit fees in order to withdraw their earnings.  (Id.)  Plaintiff Deshler, who is paid via payroll card, contends that  he is unable to access his pay without incurring ATM/bank fees.  (Deshler Decl. ¶ 6.)  In addition, he contends that oftentimes, the funds are not available for withdrawal until well after the payday.  (Id.)

### 3.      Uncompensated Time and Expenses

Plaintiffs assert several claims involving uncompensated time and expenses, including regular time, overtime, meal break time, travel time, and cleaning supply expenses.  As to minimum wages, Plaintiffs contend that Capital routinely fails to pay for all hours worked, resulting in lower pay, often below the minimum wage.  (See Hussein Decl. ¶ 4; Issa Decl. ¶ 4; Yusuf Decl. ¶¶ 4-5; Deshler Decl. ¶ 4; Kangnigan Decl. ¶ 4; Holmes Decl. ¶ 7; Quevedo Decl. ¶ 11; Zuniga Decl. ¶ 4.)  As one example, from June 18, 2014 to July 1, 2014, Hussein contends that Capital paid her $539.12 for 130 hours of work, resulting in an hourly rate of $4.14 per hour.  (Hussein Decl. ¶ 4.)

The cleaners also contend that Capitol frequently fails to pay them overtime.  (Id. ¶ 6; Issa Decl. ¶ 6; Kangnigan ¶ 6; Holmes ¶ 10; Quevedo ¶ 14; Zuniga ¶ 6.)  For example, Hussein contends that from June 18, 2014 to July 1, 2014, she worked approximately 130

hours, but Capital provided no overtime pay.  (Hussein ¶¶ 6-7.)

Similarly, Plaintiffs Quevedo and Zuniga, who are married to each other, describe a Capital policy as "wage theft."  (Quevedo Decl. ¶ 11.)  Quevedo attests that stores serviced by Capital are budgeted a weekly number of hours for cleaning, over which any cleaning work is not compensated.  (Id. ¶ 11.)  For example, while Quevedo and his wife work 28 hours per week at a particular store, they are only paid for 22 hours each, because 22 hours is the maximum number of cleaning hours allotted to that store.  (Id.)

While Capital automatically deducts lunch breaks from Plaintiffs' working hours, many cleaners are often unable to take lunch breaks, or their lunch breaks are interrupted because they were required to work.  (Id. ¶ 5; Issa Decl. ¶ 5; Kangnigan ¶ 5; Holmes ¶¶ 8-9.)

In addition, certain Plaintiffs allege that Capital fails to compensate them for supplies or travel time.  Specifically, Plaintiff Deshler alleges that Capitol requires him to purchase his own cleaning supplies in order to perform his job duties (Deshler Decl. ¶ 5), and Plaintiff Holmes contends that Capital does not reimburse him for time spent traveling between Macy's and Herberger's stores that he services as an area leader.  (Holmes Decl. ¶ 5.)

### B.     Defendant's Response

In opposition to Plaintiffs' motion, Defendant submits the Declaration of Kim Zacharkiewicz, Capital's Vice President of Finance and Administration [Doc. No. 19], along with 25 exhibits (Exs. 1-25 to Zacharkiewicz Decl. [Doc. Nos. 19-1 to 19-25]), the

Supplemental Zacharkiewicz Declaration [Doc. No. 20], and attached exhibit [Doc. No. 20-1], and the Second Supplemental Zacharkiewicz Declaration [Doc. No. 32]. Zacharkiewicz counters Plaintiffs' allegations, stating that Capital maintains detailed payroll and timekeeping records for all of its employees.  (Zacharkiewicz Decl. ¶ 4 [Doc. No. 19].)  She asserts that since 2010, Capital has used E-Pay Systems ("E-Pay"), a timekeeping service provider that allows Capital employees to clock in and out of work using a telephone.  (Id.)  E-Pay's software tracks employees' time down to the minute, therefore, Zacharkiewicz contends, Capital has detailed records of all hours worked by Plaintiffs.  (Id.)  Zacharkiewicz further contends that it is Capital's policy to pay all non-exempt employees for every hour worked, including time and a half for overtime work exceeding 40 hours in a workweek.  (Id. ¶ 5.)  In the event that Capital's timekeeping records are incorrect because an employee has forgotten to clock in or out, Capital's "Administrative Pay Corrections Policy" provides for employees to notify it of any errors, permitting Capital to address any such problems.  (Id. ¶ 6.)  Zacharkiewicz observes that some Plaintiffs in this suit have successfully used the Administrative Pay Corrections Policy, including Holmes, Issa, and Zuniga.  (Id. ¶ 7.)

Zacharkiewicz states that Capital began using Employco USA for payroll processing services in January 2015.  (Id. ¶ 12.)  At that time, Capital sent written instructions in English and Spanish to its employees, explaining how they could access their electronic earnings statements.  (Id.)  According to Zacharkiewicz, these instructions are also available on the Employco website.  (Id.)  When an employee accesses the

Employco site and clicks on "Check History," the site displays a list of paychecks, that, for each paycheck issued, provides the check date, gross pay, net pay, and check number.  (Id. ¶ 13.)   In addition, for each paycheck, the site displays a full earnings statement, including the employees' work hours, hourly rate for both regular and overtime hours, the dates of the applicable pay period, and all taxes and deductions applied to the check.  (Id. ¶ 14.)

Zacharkiewicz avers that prior to January 2015, Capital used Paylocity software for payroll processing.  (Id. ¶ 15.)  She contends that employees could access electronic earnings statements through Paylocity's website, which included the same detailed payroll information available on Employco's website.  (Id.)  Zacharkiewicz asserts that although most employees receive electronic statements, Capital provides written earnings statements to employees who request them.  (Id. ¶ 16.)  For instance, Zacharkiewicz notes that Plaintiffs Hussein, Issa, and Yusuf requested and received written statements as of March 2015.  (Id.; Exs. 8 & 9 to Zacharkiewicz Decl. [Doc. Nos. 19-8 & 19-9].)  In the Second Supplemental Zacharkiewicz Declaration, filed following the hearing on the instant motion in response to questions raised by the Court, Zacharkiewicz states that "[b]eginning with the pay period ending on July 14, 2015, [Capital] voluntarily started sending earnings statements to all employees in the State of Minnesota for each paycheck issued."  (Second Supp'l Zacharkiewicz Decl. ¶ 3 [Doc. No. 32].)  She further states that Capital will continue to send written earnings statements to its Minnesota employees on a permanent and ongoing basis.  (Id. ¶ 4.)

According to Zacharkiewicz, Capital pays employees' wages "predominantly

through direct deposit and payroll account cards." (Zacharkiewicz Decl. ¶ 18 [Doc. No. 19].)  She indicates that each of the Plaintiffs provided written consent to receive their wages through either of these two methods and that three current employee-Plaintiffs receive their pay through direct deposit.  (Id. ¶¶ 18-19.)

For those employees who receive their pay through payroll cards, Capital contracts with Insight Card Services ("Insight"), a third-party vendor, to provide pay in the form of "SimplyPaid" payroll cards.  (Id. ¶ 20.)  Zacharkiewicz maintains that employees may obtain cash using their payroll cards in a variety of ways.  (Id. ¶ 21.)  A Frequently-Asked-Questions form on the SimplyPaid website mentions using an Allpoint ATM, going to a bank, or getting cash back when making a purchase as ways in which to withdraw cash without incurring fees.  (Id.)

Regarding Plaintiffs' claims of non-payment for overtime work, Capital indicates that Plaintiff Hussein has not informed Capital of underpayment for the period between March 12, 2014 and March 26, 2014, but Capital would have worked with her to address this issue consistent with Capital's Administrative Pay Corrections Policy.  (Id. ¶ 24.) Capital contends that it responded to Plaintiff Issa when she notified it about unpaid work hours (id. ¶ 25), and that it similarly responded to an issue raised by Plaintiff Yusuf.  (Id. ¶ 26.)   As to the complaint lodged by Quevedo and Zuniga of non-paid regular hours due to a per-store allocation of cleaning time, Capital states that its budgeted hours represent the hours expected for cleaning of a particular store; this does not serve as a maximum number of hours paid for cleaning each store.  (Id. ¶ 32.)  Moreover, Capital contends that the

timekeeping records for Quevedo and Zuniga disprove their claims of non-payment for all hours worked.  (Id. ¶¶ 33-35.)

As to meal breaks, Zacharkiewicz contends that Capital's meal break policy – set forth in Capital's Employee Handbook – requires that employees take a 30-minute meal break during any shift lasting seven or more consecutive hours.  (Id. ¶¶ 8-9.)  The policy includes a reversal procedure, to be performed within 24 hours, whereby employees may notify Capital of instances in which they performed work during a meal break in order to receive pay for that time.  (Id. ¶ 8.)

Regarding Plaintiffs' allegations about non-reimbursed cleaning supplies, Zacharkiewicz attests that Plaintiff Deshler has not submitted any expense reimbursement forms for his alleged purchases.  (Id. ¶ 29.)  Similarly, as to Plaintiff Holmes' claims of unpaid travel time, Capital identifies various dates on which Holmes worked, as well as the locations in question.  (Id. ¶ 31.)  While noting that Holmes did not report any allegedly unpaid work hours to Capital on these occasions, Capital states that it will issue retroactive payment to Holmes for two occasions when it appeared that he traveled without a substantial amount of non-work time.  (Id.)

### C.    Plaintiffs' Motion for Conditional Certification Under the FLSA

In the instant motion, Plaintiffs seek conditional certification of a FLSA collective action on behalf of all cleaners (including crew leaders) who work or worked for Capital in Minnesota at any time within three years prior to the date on which the Court grants the instant motion.  (Pls.' Mot. for Cond'l Cert. at 1-3 [Doc. No. 5].)  Plaintiffs argue that they

meet the fairly lenient standard for conditional certification under § 216(b) of the FLSA.

(Pls.' Mem. Supp. Mot. for Cond'l Cert. at 15 [Doc. No. 7].)  They assert that all members

of the proposed FLSA collective perform the same job duties, work in Minnesota under

the same district manager, are subject to the same payroll and timekeeping policies, and

are subject to a common plan.  (Id. at 17.)  Under this alleged plan, Plaintiffs contend that

Capital under reports their hours and fails to pay them overtime compensation.  (Id.)

Capital, however, argues that conditional FLSA certification is not appropriate

because Plaintiffs cannot meet the fairly lenient standard.  (Def.'s Mem. in Opp'n to FLSA

Cond'l Cert. at 19 [Doc. No. 21].)  First, Capital argues that the allegations of minimum

wage and overtime violations are substantially false and unsupported, pointing to Capital's

records to disprove certain of Plaintiffs' allegations.  (Id.)  Capital urges the Court to reject

"Plaintiffs' faulty and deceptive math" in determining whether Plaintiffs have a colorable

basis for their claims.  (Id. at 21.)  Further, Capital argues that Plaintiffs assert only

"generic, conclusory allegations" that merely restate the averments in the Complaint.  (Id.

at 23.)  In addition, even assuming the truth of Plaintiffs' allegations, Capital argues that

numerous differences exist between Plaintiffs, e.g., some assert claims for unpaid lunch

breaks while others do not, only one Plaintiff asserts an unpaid travel time claim, and only

one asserts that his work hours were capped by Capital.  (Id. at 22) (citations omitted).

Capital also contends that for at least six months of the three years in question, the

proposed class members were supervised by two different area managers.  (Id.)

## II.    DISCUSSION

### A.    Conditional Certification of FLSA Claims

The FLSA authorizes employees to bring a collective action against employers for minimum wage and overtime violations.  29 U.S.C. § 216(b).  Unlike a Rule 23 class action, under the FLSA, no employee shall be a party to a collective action unless "he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Jennings v. Cellco P'ship, No. 12–cv–00293 (SRN/TNL), 2012 WL 2568146, at *3 (D. Minn. July 2, 2012) (citing Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005)).  Courts have discretion, in "appropriate cases," to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs.  Saleen v. Waste Mgmt., Inc., 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

To proceed with a collective action, plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class.  Brennan v. Qwest Commc'ns Int'l, Inc., No. 07–cv–2024 (ADM/JSM), 2008 WL 819773, at *3 (D. Minn. Mar. 25, 2008).  Determining whether plaintiffs are similarly situated to the proposed class requires a two-step inquiry.  Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citations and quotations omitted).  First, the court determines whether the class should be conditionally certified for notification and discovery purposes.  Id.  The plaintiffs need only establish at that time a colorable basis for their claim that the putative

13

class members were the victims of a single decision, policy, or plan.  Id.  Determination of

class status at the notice stage is granted liberally because the court has minimal evidence

for analyzing the class.  Ray v. Motel 6 Operating, Ltd. Partnership, No. 3–95–828 (RHK),

1996 WL 938231, at *2 (D. Minn. Mar. 18, 1996).

 After discovery is completed, the court conducts an inquiry into several factors if

there is a motion to decertify the class.  Burch, 500 F. Supp. 2d at 1186.  These factors

include: (1) the extent and consequences of disparate factual and employment settings of

the individual plaintiffs; (2) the various defenses available to the defendant that appear to

be individual to each plaintiff; and (3) other fairness and procedural considerations.  Id.  If

the class is decertified, opt-in class members are dismissed without prejudice and the case

proceeds only in the putative class representatives' individual capacities.  Keef v. M.A.

Mortenson Co., No. 07–cv–3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4,

2008).

 Since the parties here have not completed discovery, this case is at the first step of

the two-step inquiry.  Thus, the Court must only determine whether Plaintiffs have come

forward with evidence establishing a colorable basis that the putative class members are

victims of a single decision, policy, or plan.  Frank v. Gold'n Plump Poultry, Inc., No. 04-

cv-1018 (JNE/RLE), 2005 WL 2240336, at *2.  At this stage, courts usually rely on the

pleadings and any affidavits submitted by the plaintiff to determine whether to grant

conditional certification.  See Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159,

1164 (D. Minn. 2007) (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218

14

(11th Cir. 2001)).  However, the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties[.]"  <u>Brennan</u>, 2008 WL 819773, at *3 (citation omitted).

### 1.    Similarly Situated Putative Class Members

Although the term "similarly situated" is not defined by the FLSA, it "typically requires a showing that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class."  <u>Keef</u>, 2008 WL 3166302, at *2 (citation and quotation omitted). Determining whether Plaintiffs' showing meets this standard "lies within the Court's sound discretion."  <u>Id.</u>

Plaintiffs asserts that members of the proposed FLSA class are similarly situated, identifying the following bases: (1) they perform the same job duties – they clean Macy's and Herberger's department stores; (2) they work in Minnesota under the same district manager(s); (3) they are subject to identical payroll and timekeeping policies created by Capital's corporate office; and (4) they are subject to a common plan or practice of Capital's under reporting of hours and failure to pay Plaintiffs for all regular and overtime work.  (Pls.' Mem. Supp. Mot. for Cond'l Cert. at 17 [Doc. No. 7].)

The eight employee declarations submitted by Plaintiffs provide a colorable basis for the Court to conclude, for purposes of the first stage of conditional certification, that (1) Plaintiffs are similarly situated to putative class members because of the uniformity of their job duties; and (2) Defendant's policy or plan with respect to payment of regular

wages and overtime wages  inflicted a common injury on Plaintiffs and the putative class.

As to uniformity of job duties, Capital admits in its Answer that Plaintiffs work for Capital at Macy's and Herberger's department stores throughout Minnesota, cleaning bathrooms, polishing floors, emptying trash, and maintaining store fixtures.  (Def.'s Answer ¶ 2 [Doc. No. 29].)  Plaintiff Quevedo attests that based on his past experience as an area manager, Capital employs approximately 50 cleaners in Minnesota, and given employee turnover, Quevedo estimates that Capital has employed several hundred cleaners in Minnesota.  (Quevedo Decl. ¶ 21.)  Plaintiffs, all of whom work or worked for Capital in Minnesota, have sufficiently demonstrated that they have or had similar job duties and that, until quite recently, they worked for one district manager, Rudy Hanuman, who was responsible for all duties related to payroll.  (Id. ¶¶ 16-17.)

Regarding a common injury from a common policy or practice, a party seeking conditional certification must generally "show[ ] that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class."  Jennings, 2012 WL 2568146, at *5. Defendant argues, however, that the identified single decision, policy or plan of the employer must be unlawful.  (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 25-26 [Doc. No. 21]) (citing Saleen, 649 F. Supp. 2d at 940) (stating that the putative class members must be harmed by an unlawful companywide policy).  Capital contends that Plaintiffs cannot satisfy this requirement because Capital's actions were lawful, pointing to its payment and training policies, which, it asserts, conform with the law.  (Id.)  Specifically,

Capital notes that its Employee Handbook sets forth lawful policies and provides a mechanism for employees to correct any mistakes through its Administrative Pay Corrections Policy. (Id. at 27; Employee Handbook, Ex. 1 to Zacharkiewicz Decl. [Doc. No. 19-1 at C000003].) Moreover, it contends that where an employer establishes a reasonable process for employees to report uncompensated work time, the employer is not liable for nonpayment if the employee fails to follow the process, as is the case here. (Id.) (citing Jones-Turner v. Yellow Enter. Sys., LLC, 597 Fed. App'x 293, 298 (6th Cir. 2015); White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012); Saleen, 649 F. Supp. 2d at 941.) Finally, Capital argues that Plaintiffs' claims are fatally vague. (Id. at 23-24.)

The Court finds, however, that Plaintiffs satisfy the requirement of demonstrating a common injury from a common policy. Plaintiffs' declarations corroborate their allegations in the Complaint that Capital's wage payment practices caused Plaintiffs to perform unpaid regular and overtime work, as a result of Capital's under reporting of hours, work performed during unpaid meal breaks, uncompensated travel time, and/or non-reimbursed expenses for cleaning supplies. (Cf. Hussein Decl. ¶¶ 4, 6-7; Issa Decl. ¶¶ 4-6; Yusuf Decl. ¶¶ 4-6; Deshler Decl. ¶¶ 4-5; Kangnigan Decl. ¶¶ 4-6; Holmes Decl. ¶¶ 5, 7-10; Quevedo ¶¶ 11, 13-14; Zuniga Decl. ¶¶ 4-6 with Compl. ¶¶ 6, 8, 28, 34, 34-37; 40-43; 46-48; 50-51; 55; 70-76; 79-80 [Doc. No. 1].)

While Plaintiffs were not always denied regular or overtime wages in precisely the same manner, plaintiffs may be considered similarly situated when "they suffer from a

17

single, FLSA-violating policy, and when proof of that policy or of conduct in conformity

with that policy proves a violation as to all the plaintiffs." O'Brien v. Ed Donnelly

Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009). Plaintiffs here have articulated common

practices in which their pay did not reflect all hours worked. Notably, Plaintiffs had no

way to check their hours to verify accurate reporting and payment because they contend

that Capital did not provide them with earnings statements and pay stubs, nor were they

given the ability to access these records electronically while at work. (Hussein Decl. ¶ 3;

Issa ¶ 3; Yusuf Decl. ¶ 3; Deshler Decl. ¶ 3; Kangnigan Decl. ¶ 3; Holmes Decl. ¶ 4;

Quevedo Decl. ¶ 5; Zuniga Decl. ¶ 3.)

Regarding the requirement of demonstrating the "unlawfulness" of the common

plan or practice, Plaintiffs do not allege that an official written policy was unlawful; rather,

they allege that Defendant's unwritten practice or conduct was in violation of the FLSA

and state laws. (Compl. ¶¶ 6, 28, 34-37, 81-82, 112-19, 123-127 [Doc. No. 1].)

Moreover, Plaintiffs attest that when they complained about or questioned Capital about

its practices, they received no response or action. (Hussein Decl. ¶ 3; Issa Decl. ¶ 4;

Deshler ¶ 5; Quevedo ¶ 8-9.) Or, in the case of Plaintiff Yusuf, when Capital took

"action," its action was to terminate her. (Yusuf Decl. ¶ 5.) In contrast, in Thompson v.

Speedway SuperAmerica, LLC, No. 08-cv-1107 (PJS/RLE), 2009 WL 130069, at *13 (D.

Minn. Jan. 20, 2009), this Court denied conditional certification where the plaintiffs failed

to show that employee non-compensation was due to the employer's decision. Here,

Plaintiffs sufficiently demonstrate that Capital's failure to fully compensate them for all

hours worked resulted from Capital's conscious practices and decisions and not from an inadvertent mistake.

Defendant further argues, however, that the facts set forth in the Zacharkiewicz Declarations and attached exhibits demonstrate that Plaintiffs' allegations are substantially false. (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 19 [Doc. No. 21].) As noted, courts typically rely on a plaintiff's pleadings and affidavits to determine whether to grant conditional certification at the first stage of the proceedings. Parker, 492 F. Supp.2d at 1164. While the Court should not "overlook facts which generally suggest that a collective action is improper," West v. Border Foods, Inc., No. 05-CV-2525 (DWF/RLE), 2006 WL 1892527, at *7 (D. Minn. June 12, 2006) (citation omitted), "[t]he Court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." Dominquez v. Minn. Beef Indus., Inc., No. 06-CV-1002 (RHK/AJB), 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007)). Thus, the fact that Capital's Employee Handbook claims that employees are paid for all hours worked, (Employee Handbook, Ex. 1 to Zacharkiewicz Decl. [Doc. No. 19-1 at C000002), does not defeat conditional certification. Rather, as Plaintiffs note, "the mere existence of written policies that comply with the FLSA is irrelevant if Plaintiffs show practices in violation of that policy." (Pls.' Reply Mem. at 19 [Doc. No. 30]) (citing Russell v. Ill. Bell Tel. Co., Inc., 721 F. Supp. 2d 804, 815 (N.D. Ill. 2010)) (stating that "lawful written (or verbal) policies will not shield [a] company from liability if plaintiffs can show other company-wide practices that may have been contrary to those policies and

19

violated the FLSA.")

Similarly, Capital argues that Plaintiffs' claims fail, making conditional

certification improper, because Plaintiffs Quevedo and Escamilla did not follow Capital's

corrective action procedures.  (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 25-26 [Doc.

No. 21]; Zacharkiewicz Decl. ¶ 36 [Doc. No. 19].)  In Saleen, 649 F. Supp. 2d at 942, a

case on which Defendant relies, this Court observed that the defendant employer submitted

evidence showing that on 222,000 occasions during the proposed class period, the

employer paid for time worked during meals, including for a number of opt-in employees.

While the Court questioned the full statistical significance of this number, it concluded

that "evidence that [the employer] paid for time worked during meal breaks on hundreds of

thousands of occasions is very difficult to reconcile with plaintiffs' claim that [the

employer] maintains a companywide policy not to pay for worked meal breaks."  Id.  This

evidence, along with other evidence submitted by Defendant, led the Court, in a "close

case," to affirm the magistrate judge's recommendation to deny conditional class

certification.  Id. at 943.  The Court finds the facts of Saleen distinguishable.  Notably,

the plaintiffs in Saleen sought certification of a class of tens of thousands of employees,

which the Court found problematic, given all of the facts:

> plaintiffs are not seeking to certify a class of people who work under one
> particular manager, or who work at one particular plant, or who work under
> one particular collective-bargaining agreement, or even who work in one
> particular state.  Plaintiffs are instead asking this Court to certify a
> conditional class of tens of thousands of employees (some unionized, some
> not) who worked for untold numbers of different managers at hundreds of
> different locations throughout the United States. Plaintiffs have no direct

> evidence of an unlawful policy that applies to all of these people, but instead
> ask the Court to infer the existence of such a policy from the fact that a tiny
> fraction of [the defendant's] workers allege that they were not paid for
> working through meal breaks.

Id. at 942.

In contrast, Plaintiffs here seek conditional certification on behalf of cleaners in a single state – Minnesota – during the three-year statutory period.  (Pls.' Mot. for Cond'l Cert. at 1 [Doc. No. 5].)  Plaintiffs worked for one or two regional managers during that time and the proposed class likely numbers in the hundreds of employees.  (Quevedo Decl. ¶¶ 16, 21; Zacharkiewicz Decl. ¶ 37 [Doc. No. 19].)  Moreover, the Saleen decision does not indicate that the employees there lacked access to pay records with which they might have verified whether the employer was underpaying them.  Here, however, Plaintiffs allege and attest that they had no access to pay records and were therefore unable to confirm whether Capital was properly compensating them for all hours worked.  (Hussein Decl. ¶ 3; Issa ¶ 3; Yusuf Decl. ¶ 3; Deshler Decl. ¶ 3; Kangnigan Decl. ¶ 3; Holmes Decl. ¶ 4; Quevedo Decl. ¶ 5; Zuniga Decl. ¶ 3.)

Given Plaintiffs' allegations of earnings statement and recordkeeping violations, it is also not surprising that Plaintiffs generally lack documentary evidence in support of their claims.  Capital argues that Plaintiffs' allegations are conclusory, overly broad, and that "[t]heir vagueness makes them impossible to refute." (Defs.' Opp'n to FLSA Cond'l Cert. at 24 [Doc. No. 21].)  The Court disagrees.  Moreover, belying Capital's claimed inability to refute Plaintiffs' claims, it submits a 37-paragraph declaration and two

supplemental declarations in opposition to Plaintiffs' motion, along with 26 exhibits. (Zacharkiewicz Decl. & Exs. 1-26 [Doc. No. 19] & Supp'l Zacharkiewicz Decl. & Ex. 1 [Doc. No. 20]; Second Supp'l Zacharkiewicz Decl. [Doc. No. 32].)

The Court does not reject the Zacharkiewicz Declarations and exhibits, but has instead considered all of the evidence.  See In re RBC Dain Rauscher Overtime Litigation, 703 F. Supp. 2d 910, 964 (D. Minn. 2010) (noting that the court must consider all of the evidence to determine whether it should facilitate notice and expand the scope of litigation)).  However, as noted earlier, at this stage, the Court makes no credibility determinations or factual findings.  Brennan, 2008 WL 819773, at *3.  Given the lenient standard of review at this first stage of certification, the Court finds that Plaintiffs' allegations and evidence sufficiently establish that Plaintiffs and putative class members are similarly situated.  Conditional certification under 29 U.S.C. § 216(b) is therefore warranted.

### 2.    Judicial Notice

District courts have discretion in appropriate cases to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs.  Hoffmann-La Roche, 493 U.S. at 169. "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time."  Id. at 171.  "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court

benefit from settling disputes about the content of the notice before it is distributed.  This

procedure may avoid the need to cancel consents obtained in an improper manner."  Id. at

172.  "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of

duplicative suits and setting cutoff dates to expedite disposition of the action."  Id.

        In addition to seeking an order conditionally certifying Plaintiffs' case as a

collective action pursuant to 29 U.S.C. § 216(b), Plaintiffs request that the Court's order

include the following:  (1) a 60-day notice period; (2) approval of the form of Plaintiffs'

proposed notice (see Pls.' Proposed Notice & Consent Form, Ex. 18 to Hansen Aff. [Doc.

No. 8-9]); (3) authorization for Plaintiffs' counsel to mail the Court-approved notice to all

members of the putative FLSA collective; (4) requiring Defendant to post the Court-

approved notice and consent forms  in a conspicuous location in Defendant's office in

every Macy's and Herberger's store in Minnesota while setting out in plain view enough

blank consent forms for all Capital employees at each particular store; (5) authorization for

Plaintiffs' counsel to mail and email a reminder notice at approximately the 30th day of

the notice period (see Pls.' Proposed Reminder Letter, Ex. 20 to Hansen Aff. [Doc. No. 8-

11]); and (6) ordering Defendant to produce a list of all cleaners employed by Capital in

Minnesota, including each person's name, job title, email address, mailing address,

telephone number, dates of employment, location of employment, date of birth, and last

four digits of their social security number.  (Pls.' Mot. for Cond'l Cert. at 1 [Doc. No. 5];

Pls.' Mem. Supp. Mot. for Cond'l Cert. at 19-22 [Doc. No. 7].)

        Defendant opposes many of the elements of Plaintiffs' request, and has submitted a

black-lined version of the Proposed Notice, indicating its revisions.  (Def.'s Black-Lined

Proposed Notice, Ex. B to Wilhelm Aff. [Doc. No. 22-2].)  While reasonable amendments

to a proposed notice may be considered, "those that are 'unduly argumentative, meant to

discourage participation in the lawsuit, or are unnecessary or misleading' should be

rejected."  Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 450 (S.D.N.Y.

2011) (quoting In re Milos Litig., No. 08 Civ. 6666 (LBS), 2010 WL 199688, at *2

(S.D.N.Y. Jan. 11, 2010)).

### a.      Content of Notice

Under the FLSA, a claim must be brought "within two years after the cause of

action accrued," or within three years if the violation was willful.  29 U.S.C. § 255(a).  In

the case of a collective action, a lawsuit is "commenced" by an "individual claimant":

> (a) on the date when the complaint is filed, if he is specifically named as a
> party plaintiff in the complaint and his written consent to become a party
> plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so
> appear—on the subsequent date on which such written consent is filed in the
> court in which the action was commenced.

Id. § 256.  Plaintiffs allege that Defendant's conduct was willful.  (Compl. ¶¶ 12; 36-37;

95-96; 117-18; 126; 197 [Doc. No. 1].)  As noted by this Court in RBC Dain Rauscher,

703 F. Supp. 2d at 966, "[n]otice should be consistent with this determination."  Many

courts around the country require the provision of notice only to persons employed by the

defendant within three years of the notice or of the court order approving such notice.

Harris v. Chipotle Mexican Grill, Inc., 49 F. Supp. 3d 564, 581 (D. Minn. 2014) (citing

Whitehorn, 767 F. Supp. 2d at 451 (S.D.N.Y. 2011)); Tolentino v. C & J Spec–Rent Servs.

Inc., 716 F. Supp. 2d 642, 654;  Camp v. Progressive Corp., No. Civ.A. 01–2680, 2002

WL 31496661, at *6 (E.D. La.  Nov. 8, 2002)).  Consistent with this authority, the Court

finds that the notice period shall begin three years before the date of this ruling on

conditional certification.  Plaintiffs' Proposed Notice & Consent Forms, in English,

Spanish, and Somali, (Ex. 18 to Hansen Aff. [Doc. No. 8-9 at 2]), shall therefore be

amended by replacing July 15, 2012 with **November 20, 2012**[4], to reflect the proper

starting point for any individual's participation.[5]

Defendant contends that the proposed notice is deficient because it fails to describe

litigation obligations that prospective plaintiffs may face such as responding to written

discovery requests, appearing for depositions, and giving testimony at trial.  (Def.'s Mem.

in Opp'n to FLSA Cond'l Cert. at 32-33 [Doc. No. 21]) (citing Knaak v. Armour-Eckrich

Meats, LLC, 991 F. Supp. 2d 1052, 1061 (D. Minn. 2014) (requiring that notice be revised

to "include defendant's proposed discovery participation warning.")).  Plaintiffs agree to

the inclusion of language warning potential plaintiffs that they may be required to testify

or appear for a deposition. (Pls.' Reply Mem. at 22 [Doc. No. 30].)  The Court finds that

the general language proposed by Plaintiffs regarding the obligations of class members is

---

[4] In this Order, the Court indicates any revisions to Plaintiffs' Proposed Notice in boldface type.  These revisions are in boldface only for the sake of clarity herein; revisions shall appear in the Notice in regular typeface.

[5] Plaintiffs' Proposed Reminder Letter correctly notes that the three-year statutory period begins to run "from [Month and Day of Conditional Certification Order], 2012, to . . . ." (Pls.' Proposed Reminder Letter, Ex. 20 to Hansen Aff. [Doc. No. 8-11].)

acceptable.  Accordingly, Plaintiffs' Proposed Notice shall be amended to add a new

sentence on the second page, under the section labeled "YOUR RIGHT TO JOIN THE

LAWSUIT" (Pls.' Proposed Notice & Consent Form at 2, Ex. 18 to Hansen Aff. [Doc. No.

8-9 ]), following the sentence that begins "If you worked as a cleaner . . . ."   The new

sentence shall read **"If you join the lawsuit, you may be required to respond to written**

**questions, sit for a deposition, or testify in court.**"

    Defendant also argues that the proposed notice should "make clear that not only

does sending in an opt-in form not guarantee any recovery, but Plaintiffs may be liable for

[Defendant's] litigation costs."  (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 32 [Doc.

No. 21]) (citing Knispel v. Chrysler Grp. LLC, No. 11-11886, 2012 WL 553722, at *7

(E.D. Mich. Feb. 21, 2012) (requiring notice of potential costs); Snide v. Discount Drug

Mart, Inc., No. 1:11CV0244, 2011 WL 5434016, at *6 (N.D. Ohio Oct. 7, 2011) (same);

Baden-Winterwood v. Life Time Fitness, 2:06-CV-99, 2006 WL 2225825, at *1 (S.D.

Ohio Aug. 2, 2006) (same)).  Plaintiffs oppose the inclusion of any such language.  (Pls.'

Reply Mem. to Mot. for Cond'l Cert. at 18 [Doc. No. 109].)  The Court agrees with the

authority cited by Plaintiffs that the threat of payment of defense costs to absent class

members if Capital prevails is out of proportion to the risk and including such a warning

could have a chilling effect on participation in the collective action.  See Case v. Danos &

Curole Marine Contractors, LLC, Nos. 14-cv-2775, 14-cv-2976, 2015 WL 1978653, at *8

(E.D. La. May 4, 2015) (citing Guzman v. VLM, Inc., No. 07-CV-1126 (JG) (RER), 2007

WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) ("Given the remote possibility that such

costs for absent class members would be other than de minimis . . . such language is inappropriate."); see also Hart v. U.S. Bank NA, No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *7 (D. Ariz. Nov. 8, 2013) ("The Court is unconvinced that including language regarding potential costs of unsuccessful litigation would accomplish anything other than chilling an interested plaintiff from seeking more information."); Williams v. U.S. Bank NA, 290 F.R.D. 600, 613 (E.D. Cal. 2013) (same).  Defendant's request to modify the proposed language in this regard is therefore denied.

Capitol also seeks to modify the proposed notice to include additional language in support of its position regarding Plaintiffs' allegations in the lawsuit.  (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 31 [Doc. No. 21].)  While Defendant quotes Jones v. Casey's General Stores, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007), for the proposition that misleading communications with prospective collective members may taint the entire putative class, the language proposed by Plaintiffs is not misleading.

Defendant also suggests miscellaneous revisions in its black-lined version of Plaintiffs' Proposed Notice.  (See Def.'s Black-Lined Proposed Notice, Ex. B to Wilhelm Aff. [Doc. No. 22-2].)  The Court finds that Capital's suggested revisions are generally unnecessary, with the exception of a suggested revision to the final sentence that appears in second paragraph of the second page of Plaintiffs' Proposed Notice, under the caption "NOTICE OF COLLECTIVE ACTION LAWSUIT."  (See id.)  The Court finds that this particular suggestion is clearer than the language proposed by Plaintiffs.  Instead of stating, as Plaintiffs propose, "You are receiving this notice because you are eligible to

join this case by returning a consent form" (id.) (emphasis added), the sentence shall state, as Defendant proposes, "**You are receiving this notice because you may be eligible to join this case by returning a consent form**." (Emphasis added).  Plaintiffs shall amend the Proposed Notice accordingly.

### b.      Mechanism and Form of Notice

As noted, Plaintiffs also request that the Court set a 60-day notice period and order that notice be disseminated by mail and posted copy in all Capital office spaces located in Macy's and Herberger's stores in Minnesota, along with the provision of sufficient copies of blank consent forms for all Capital employees at each store.  (Pls.' Mem. Supp. Mot. for Cond'l Cert. at 20 [Doc. No. 7].)  In addition, Plaintiffs ask that the Court permit the dissemination of a reminder letter on approximately the 30th day of the 60-day notice period.  (Id. at 21; see Pls.' Proposed Reminder Letter, Ex. 20 to Hansen Aff. [Doc. No. 8-11].)  Defendant does not appear to contest the 60-day and 30-day time periods.  The Court finds that a 60-day notice period is reasonable.  See Chin v. Tile Shop, 57 F. Supp. 3d 1075, 1094 (2014) (approving 90-day notice opt-in period); Rebischke v. Tile Shop, LLC, No. 14-cv-624 (MJD/SER), 2015 WL 321667, at *5 (D. Minn. Jan. 26, 2015) (same); Jennings, 2012 WL 2568146, at *6 (same).

Defendant contends, however, that Plaintiffs' proposal to send four forms of notice – mail, posted notice, a reminder letter, and reminder email – is excessive.  (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 30-31 [Doc. No. 21].)  Defendant asserts that allowing four kinds of notice gives the improper impression that the Court endorses this action.

(Id.)  Instead, Defendant urges the Court to approve only one form of notice.  (Id.)  Capital also specifically opposes the requested posted notice in Capital's offices.  (Id. at 36.)  It argues that such notice is unnecessary, improper, and will harm its relationship with its clients and their staff members.  (Id.)

Courts have frequently required the dissemination of notice in several forms to ensure that potential plaintiffs receive notice in a timely and efficient manner.  See Harris, 49 F. Supp.3d at 582-83 (permitting the plaintiff to email and mail judicial notice and requiring the defendant to post notice in an appropriate, conspicuous place in its business); see also Atkinson v. TeleTech Holdings, Inc., No. 3:14-CV-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (noting a current nationwide trend toward emailing judicial notice in FLSA cases and permitting the sending of notice via mail and email); Rhodes v. Truman Med Ctr., No. 4:13-CV-990-NKL, 2014 WL 4722285, at *5 (W.D. Mo. Sept. 23, 2014) (noting that email provides an efficient and cost-effective means of disseminating notice); Jennings, 2012 WL 2568146, at *7 (requiring the defendant to post judicial notice in all break and lunch rooms in its call center).  The Court finds Plaintiffs' request reasonable here for similar reasons, particularly as it advances the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice.

As to Plaintiffs' request for posted notices and blank consent forms in store offices, the evidence shows that Macy's and Herberger's provide a small room in each store for use as an office.  (Quevedo Decl. ¶ 20.)  Defendant presents no evidence showing that others use these office, regardless of whether the property is owned by Macy's or

Herberger's.  The Court therefore permits notice via mail and conspicuously placed posting in Capital's offices located in Macy's and Herberger's stores in Minnesota, along with the provision of a sufficient quantity of blank consent forms for Capital employees at each store.

However, to address Defendant's concerns about giving an inaccurate impression regarding the Court's approval of participation in the FLSA collective action, the Notice shall include Defendant's proposed language: **"The Court does not encourage or discourage participation in this case**."  (Def.'s Black-Lined Proposed Notice at 1, Ex. B to Wilhelm Aff. [Doc. No. 22-2].)  Plaintiffs do not oppose the addition of this language. (Pls.' Reply Mem. at 21 [Doc. No. 30].)  This language shall be included in the Notice as indicated in Defendant's Black-Lined Proposed Notice.  (Id.)

### c.    Reminders

As to Plaintiffs' proposed forms of reminders, this Court has authorized the use of reminder letters in other FLSA cases.  See Chin, 57 F. Supp. 3d at 1094; Jennings, 2012 WL 2568146, at *6.  As Plaintiffs note, a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter.  (Pls.' Mem. Supp. Mot. for Cond'l Cert. at 21 [Doc. No. 7].)  Here, the Court finds that sending a reminder letter, via mail and email, at approximately the 30-day point is reasonable.  See Ortiz-Alvarado v. Gomez, No. 14-cv-209 (MJD/SER), 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014) (finding that one reminder notice was a reasonable way to ensure that potential class members received

notice and, if they chose to do so, filed a timely opt-in form).  While Defendant argues that

two reminders would violate the Minnesota Rules of Professional Conduct barring

solicitation of prospective clients (Def.'s Mem. in Opp'n to FLSA Cond'l Cert. at 35 [Doc.

No. 21]), the Court disagrees.  As Plaintiffs note, they seek to disseminate a Court-

facilitated notice to aid judicial economy and to reduce the possibility of numerous

separate legal actions resulting from late opt-in notices or failure to receive notice – not to

improperly solicit potential clients.  (Pls.' Reply Mem. at 22-23 [Doc. No. 30].)

Plaintiffs' proposed reminder letter, Exhibit 20 to the Hansen Affidavit [Doc. No. 8-11], is

therefore approved, and may be sent by mail and email.

### d.    Production of Information

As a related matter, Plaintiffs request the production of a list of cleaners, including

crew leaders, with names and contact information, in order to facilitate notice.  (Pls.'

Mem. Supp. Mot. for Cond'l Cert. at 22 [Doc. No. 7].)  Specifically, they seek the

production of the list to Plaintiffs' counsel within 5 calendar days of the issuance of this

Order.  (Id.)  They request that the list contain the following information:

> A list, in electronic and importable format, of all cleaners and crew leaders
> employed by Defendant in Minnesota during the last three years, including
> their name, job title, email address, mailing address, telephone number, dates
> of employment, location of employment, date of birth, and last four digits of
> their social security number.

(Id.)  Defendant argues that Plaintiffs request too much information and particularly object

to the provision of social security numbers.  (Def.'s Mem. in Opp'n to FLSA Cond'l Cert.

at 38 [Doc. No. 21].)  Plaintiffs, however, argue that the social security numbers are

31

needed in light of the three-year time period, because, for some employees, Defendant's

contact information will likely be outdated.  (Pls.' Mem. Supp. Mot. for Cond'l Cert. at 22,

n.12.)

Courts in this Circuit have frequently ordered the production of similar information

when granting conditional certification.  See Rebischke, 2015 WL 321667, at *5

(requiring the production of a list of all store managers within 10 days of the certification

ruling to include the last known address, telephone number, dates of employment, location

of employment, last four digits of each manager's social security number, and date of

birth); Chin, 57 F. Supp. 3d at 1095 (requiring the defendant to produce within 10 days of

the conditional certification ruling a list of all relevant employees, including the

employees' name, address, and dates of employment); Bilskey v. Bluff City Ice, Inc., No.

1:13-cv-62 SNLJ, 2014 WL 1664893, at *1 (E.D. Mo. April 25, 2014) (noting, in an order

compelling production, that the court had previously required defendants to produce the

full names, addresses, phone numbers, email addresses, and dates of employment for each

class member to facilitate notice to potential plaintiffs); Denney v. Lester's, LLC, No.

4:12CV377 JCH, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) (granting conditional

certification and requiring defendants to produce within 14 days of the ruling a list of all

potential class members, including their names, last known mailing addresses, dates of

employment, and email addresses, if known); Nobles v. State Farm Mut. Auto Ins. Co.,

No. 2:10-CV-04175-NKL, 2011 WL 5563444, at *2 (W.D. Mo. Nov. 15, 2011) (ordering

the defendant to produce the last four social security number digits, email addresses and

home telephone numbers of putative plaintiffs, as well as email addresses to aid plaintiffs in locating putative class members and to help upload consent forms); McKinzie v. Westlake Hardware, Inc., No. 09-796-CV-W-FJG, 2010 WL 2426310, at *5 (W.D. Mo. June 11, 2010) (granting conditional certification and ordering defendant to provide a list of the relevant employees with their last known residential address, home and cellular phone numbers, email addresses, and dates of employment.); Edwards v. Multiband Corp., No. 10-cv-2826 (MJD/JJK), 2011 WL 117232, at *5 (D. Minn. Jan. 13, 2011) (requiring, within five days of the conditional certification ruling, the production of name, job title, last known address and telephone number, last known work or personal email address, dates of employment, location of employment, employee number and social security number for all potential opt-in plaintiffs and an electronic list of all potential opt-in plaintiffs employed by defendant). However, depending on the case, such information may not be necessary. See Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 364 (W.D. Mo. 2007) (finding the request for job titles to ask for "too much."). Here, the Court finds that the requested information may prove necessary in order to facilitate notice of the putative class members. Therefore, Defendant shall produce the requested information within five days of this ruling.

Accordingly, as set forth above, the Court exercises its discretion to facilitate notice in this case. Such facilitated notice will assist in preventing the expiration of claims based on the running of the statute of limitations.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Plaintiffs' Motion for Conditional Class Certification and Judicial Notice Pursuant to 29 U.S.C. § 216(b), Class Certification Under Rule 23, and for a Preliminary Injunction Under Rule 65 [Doc. No. 5] is **GRANTED** as to conditional certification under § 216(b) and this matter is conditionally certified as a § 216(b) collective action; Plaintiffs' request for Rule 23 class certification and injunctive relief remain under advisement;

2.      Plaintiffs' Proposed Notice of Lawsuit is **APPROVED** to the extent that it is amended to comply with this Order; the revisions ordered by the Court, discussed herein, shall apply equally to the English, Spanish, and Somali versions of the Notice of Lawsuit;

3.      Plaintiffs' Proposed Consent Form is approved;

4.      The notice period is 60 days.  During this notice period, Plaintiffs' counsel may mail the notice at the beginning of the 60-day period and send a reminder notice via mail and email on approximately the 30th day of the notice period;

5.      Defendant shall post the notice in a conspicuous location in each of Defendant's Minnesota offices located in Macy's and Herberger's stores, along with sufficient quantities of blank consent forms for all Capital employees at each store; and

6.      Defendant shall produce a list of employees and related information as set

forth herein and in the format so specified within **five days** of the issuance of

this Order.


Dated:    November 20, 2015

<div style="margin-left:50%">

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge

</div>